· SAINT AMAND *et al.*, executors, *v.* LEHMAN *et al.*

120 253]
124 562
124 1026

The petition alleged that three defendants were blasting and digging a well on a vacant lot, for the purpose of interfering with a well-defined underground stream, in order to destroy complainants' mineral spring and the valuable improvements maintained in connection therewith. One of the defendants denied the conspiracy, or that damage would result, and claimed further that if any damage did result it would not be irreparable. Another of the defendants failed to answer, thereby admitting the confederacy, the threatened injury, and the other allegations in the petition. *Held:*

1. The petition set out a state of facts which was good as against a demurrer, and which if true would have entitled plaintiffs to the injunction prayed for.

2. In view of the failure of one of the defendants to answer, it would have been proper to grant the injunction against him.

3. The fact that the evidence is not briefed is not ground for dismissing the bill of exceptions, but leaves the case for any disposition which may be properly made without regard to the evidence.

4. The petition and the answer, both being verified, served the office of both pleading and evidence on the application for injunction; and without regard, therefore, to the brief of all the testimony, enough appears to show that there was a conflict of evidence on all material facts.

5. The threatened injuries referred to in the sworn petition were irreparable in their nature. The delay to the defendant, arising from an injunction, would not counterbalance the irreparable injury which might flow to petitioners if the injunction were refused and their mineral springs destroyed by the blasting and digging, and the jury on the final trial, on a full hearing of all the testimony, should find that the plaintiff was entitled to the relief prayed for.

6. In view of the state of the record, the judgment is affirmed with direction.

Argued April 5, — Decided June 8, 1904.

Petition for injunction.     Before Judge Bartlett.     Douglas superior court. January 2, 1904.

Saint Amand and others, executors of E. W. Marsh, by their petition against Ray of Douglas county, Brooker of Cobb county, and Lehman, a non-resident, and their associates and confederates, allege, that Marsh was, at the time of his death, the owner of

what is known as the Sweetwater Park Hotel property and the Bowden Lithia Springs property, in Douglas county, on which he had erected hotels, bath-houses, and cottages, laid out a park, and constructed a branch railroad and other improvements, at a total expense of about a half million dollars; that the chief value of the property is derived from the mineral springs, the waters of which were analyzed and at great expense advertised, thereby building up a large business in the bottling and sale of the water, besides attracting many visitors to the springs and property; that the defendants are and have been for some time engaged in sinking a well on property which petitioners are informed is claimed to be owned or controlled by Lehman, his confederates and associates; that this excavation is being made by the defendants to injure and damage the property of the estate of Marsh, although there is no indication that a spring would ever approach the surface at that point, or on any of the lands claimed to be owned by Lehman or either of the other defendants, but that the defendants hope, and so express themselves, that they will intersect the underground current or well-defined stream of mineral water flowing through said land to the present spring of the petitioners; that said stream is well known, and there has never been any difficulty in ascertaining its exact course; that Ray, Lehman, and the other defendants are now engaged in pounding with heavy machinery upon the strata of rock, and are sinking and blasting for the purpose of cutting off the flow of said underground current, and if allowed to proceed, the damage to the petitioners' estate will be irreparable; that this is done for the express purpose of destroying the right and property of the estate, and so as to divert the present stream from its natural course, and cause the water to sink lower into the excavation proposed to be made, and thereby totally destroy the value of the estate so far as the mineral water is concerned; that the defendants have no improvements on the land or near it, and do not occupy it, either by themselves or by tenants, and there is no necessity for doing the work, and no reason for it except to injure the property of petitioners; that all of defendants well know that for many years no one has been allowed to blast, pound, bore, or otherwise interfere with the stone around the spring, for fear of endangering the quality and quantity of the water flowing into the spring through

the underground stream aforesaid; that none of the defendants would be able to answer in damages; that while some might be able to pay what debts they owe at present, they are totally insolvent so far as being able to answer the damage to the estate if they are not enjoined; and that therefore petitioners are remediless. They pray for process against Ray, of the county of Douglas, and —————— of the county of Cobb, and Lehman, and, if Lehman can not be served with process, that he be served by publication; and for an injunction restraining the defendants from interfering with the rights of petitioner, or from digging, blasting, pounding, drilling, or boring the well and excavation complained of, and for a permanent injunction against each from further acts, by themselves or agents, toward sinking the well at the place designated, or at any other point that will in any way interfere with the property of the estate. The petition was verified positively by one of the petitioners. In his sworn answer, Lehman admitted that he was a non-resident. For want of sufficient information, he neither admitted nor denied the allegations as to the value of the improvements or character of the business created in connection with the springs. He averred that he had employed Brooker to bore the well, and that Brooker had engaged Ray to assist him therein, and that he owned the land on which the well was being dug. He denied that it will injure the plaintiff's spring; denied that he had any purpose in any way to damage the plaintiffs in the free use of their mineral spring; denied that there is any well-defined current, and averred that if there is such a stream it is impossible of ascertainment; and that there is a stream between the well and the proposed well. He denied that he was insolvent. "In answer to paragraph 17 defendant says that plaintiffs are not remediless in courts of law, and that they have no right to ask equitable relief; that if he has damaged or should damage them in any way on account of the matters set up in their petition, they have a complete and adequate remedy at law." Ray, one of the defendants, was personally served, but filed no answer. The defendant Brooker is alleged in the petition to be a resident of Cobb county, but appears to have been served by the sheriff of Douglas county leaving a copy of the petition and process at his residence. The judge refused the injunction and the plaintiffs excepted. On the call of the case in the Supreme Court, counsel for Lehman

moved to dismiss the bill of exceptions, on the ground that there was no bona fide effort by plaintiffs to brief the evidence.

*W. A. James* and *J. S. James,* for plaintiffs.
*Roberts & Hutcheson,* for defendants.

SIMMONS, C. J.   The petition charged that the three defendants had confederated for the purpose of injuring the plaintiff.   Lehman alone answered.     Even if there were defects in the service as to Brooker, Ray was properly served, and failed to answer.   His silence was therefore to be treated as an admission of the sworn allegations of the petition; warranting an injunction against him, and if, as claimed, we can not consider the evidence, it leaves the record in such shape that we can at least determine that it would have been proper to enjoin Ray from the continuance of the wrongful act alleged against him, and, by his silence, admitted to be true. According to the allegations of the verified petition, the defendants had confederated together to blast, pound, and dig the rock on a vacant lot adjoining plaintiffs' spring, not for the purpose of obtaining water useful to the defendants, but with the sole intent of injuring the plaintiffs and destroying a mineral spring of great value, around which they had constructed an immense plant. While the word is not used, the facts amount to a charge that the defendants are acting maliciously.   If, as alleged, the effort is to destroy a known or well-defined subterranean stream, or to divert it from the spring of the lower proprietor, the plaintiffs are not without remedy, even though the flow is underground.   Or if the evidence shall show that it is a case of interference with percolating waters, and that the defendants are actuated by malice in wasting or diverting the water, the plaintiffs are still entitled to equitable relief.     Wheatly *v.* Baugh, 25 Pa. St. 528, 64 Am. Dec. 721, cited in *Sadler* v. *Lee,* 66 Ga. 48.   And compare Barclay *v.* Abraham (Iowa), 96 N. W. Rep. 1080; Stillwater Co. *v.* Farmer, 60 L. R. A. 875, as to the effect of malice and waste.

Lehman's answer was in the nature of a demurrer, answer, and plea combined.   It admitted the digging of the well, and in so far as it denied that there was any underground stream running from it to the spring, or that any damage would be occasioned to the plaintiffs by the digging of the well, it raised an issue of fact which could properly have been considered by the trial judge on the ap-

plication for injunction.   In so far, however, as it set out "that plaintiffs are not remediless in courts of law, and that they have no right to ask equitable relief; that if he [defendant] has damaged or should damage them in any way on account of the matters set up in their petition, they have a complete and adequate remedy at law," it was performing the office of a demurrer, which, however, should have been overruled, for it is hard to imagine any case to which the remedy of injunction to prevent irreparable damages would be applicable if not to facts like those set out in this petition.   Had it appeared, therefore, that the interlocutory relief prayed for was refused on this ground, a reversal would necessarily result.   And so too if it was denied because of conflicting evidence.   For, while ordinarily the court will not interfere with the chancellor's discretion in passing upon disputed facts, there are some cases in which the fact of conflict does not deprive the petitioner of a remedy by which to preserve the status until the disputed issue may be submitted to the jury, in a trial in which both parties have the right to cross-examine all the witnesses.   This distinction was pointed out in *Everett* v. *Tabor*, 119 *Ga.* 128, though the opinion was not published until after the interlocutory hearing in the present case.   It was there said that there would be strong reason to grant the injunction if the delay to one party would not counterbalance the irreparable injury which might flow to the petitioner were the chancellor to decide the facts in a way different from that which might be determined by the jury on final verdict.   The present case is within that rule. The well of the defendants is being dug on a vacant lot.   They have no immediate occasion for its use, and the injunction can only occasion a delay from which no serious or irreparable damage can flow.   But if the blasting or digging should divert the underground stream, or destroy the spring of the plaintiffs, and if on the final trial the jury should find in favor of the plaintiffs, it is manifest that an enormous damage of a character considered irreparable in law would be inflicted.   Money could not compensate for what had been done, and refilling the well would not undo the harm which had been done.

It is said, however, that the plaintiffs have not made any bona fide effort to brief the evidence, and that therefore the case should be dismissed.   But this result does not flow from a disregard of

the rule of practice. *Southern Mining Co.* v. *Brown*, 107 *Ga.* 264. It does prevent this court from inspecting the brief of evidence, and if the case were solely dependent upon a consideration of what appeared therein, an unconditional affirmance would necessarily result. But the petition and answer were both sworn to, and in reading them as pleadings we necessarily are put in possession of the fact that the parties were diametrically at issue, and that there was a conflict in the evidence. The testimony must conform to the pleadings, and could do no more than add to the conflict. In consideration of which, and that no harm could come to the defendants from granting the injunction, and that irreparable injury might flow to the petitioners from its refusal, we affirm the judgment. But under the Civil Code, §§ 5998, 5586, we direct that the judgment of affirmance shall not prejudice the right of the plaintiffs to present another application for an injunction. *Brown* v. *Joiner*, 77 *Ga.* 232; *Ford* v. *Harris*, 95 *Ga.* 97 (4); *Sims* v. *Cordele Ice Co.*, 119 *Ga.* 597.

*Judgment affirmed with direction. All the Justices concur.*